IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 13-cr-00160-PAB-7

UNITED STATES OF AMERICA,

 Plaintiff,

v.

7. SANTOS FUNEZ,

 Defendant.

_____

# ORDER
_____

 This matter is before the Court on defendant Santos Funez's Emergency Motion for Compassionate Release [Docket No. 1046]. The government has filed a response opposing the motion. Docket No. 1050.

**I. BACKGROUND**

 On July 25, 2014, after a bench trial, the Court found Mr. Funez guilty of (1) conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 28 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 21 U.S.C. § 846 ("Count 1"); (2) distribution and possession with intent to distribute 500 grams or more of methamphetamine and 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine and 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of  28 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) ("Count 23"); and (3) unlawful use of a communication facility to commit a drug trafficking offense, in

violation of 21 U.S.C. § 843(b) ("Count 24").  See Docket No. 841.  On November 7, 2014, the Court sentenced defendant to 188 months imprisonment as to Counts 1 and 23 and 48 months imprisonment as to Count 24, with the counts to run concurrently. See Docket No. 965.  Mr. Funez is incarcerated at FCI Englewood in Littleton, Colorado.   See Docket No. 1046 at 2.  Mr. Funez's projected release date, with good time credit, is November 10, 2027.  See Docket No. 1050-1 at 1.

On November 13, 2020, Mr. Funez filed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  See Docket No. 1046.  Mr. Funez claims that his body mass index of 31.2, the osteoarthrosis in his right knee, and his previous recovery from tuberculosis ("TB") means that he is at higher risk of severe complications from COVID-19.  Id. at 6-8.  Mr. Funez requests that the Court grant him compassionate release and modify his term of imprisonment to time served or, in the alternative, convert his sentence to supervised release.  Id. at 1.

## II.  ANALYSIS

Under § 3582(c)(1)(A)(i), known as the "compassionate release" provision, "a district court may grant a sentence reduction if, after considering the 18 U.S.C. § 3553(a) sentencing factors, it finds that 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (unpublished) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). That requirement is satisfied here. Mr. Funez received his denial from the warden at FCI Englewood on August 25, 2020, Docket No. 1046-2, and he filed the instant motion on November 13, 2020. See Docket No. 1046.

### A. Extraordinary and Compelling Reasons

The Sentencing Commission has identified four categories of extraordinary and compelling reasons that may warrant a sentence reduction: (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons. See U.S.S.G. § 1B1.13, cmt. n.1. Mr. Funez argues that he qualifies under subsections A and D of the sentencing guidelines. Docket No. 1046 at 6-10.

While Mr. Funez suggests that subsection A is a proper vehicle for analyzing his motion, the Court finds that is in inappropriate. The Sentencing Commission has explained that a defendant's medical condition may be an extraordinary and compelling reason warranting a sentence reduction where:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

See U.S.S.G. § 1B1.13, cmt. n.1(A). None of Mr. Funez's illnesses are terminal, and Mr. Funez does not argue that his illnesses substantially diminish his ability to provide

self-care. Thus, the Court will analyze the motion pursuant to subsection D of the policy statement.[1]

Subsection D allows for release pursuant to extraordinary or compelling reasons, other than those set out in subsections (A)-(C), "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D). Through Program Statement 5050.50, the BOP has listed the factors it uses to determine whether extraordinary and compelling reasons exist for compassionate release. *See United States v. Turns*, 2020 WL 2519710, at *3 (S.D. Ohio May 18, 2020). "BOP Program Statement 5050.50 identifies several nonexclusive factors to determine whether 'other' extraordinary and compelling reasons exist: the defendant's criminal and personal history, nature of the offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *Saldana*, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12).

"The existence of the COVID-19 pandemic no doubt can be described as 'extraordinary' insofar as it is '[b]eyond what is usual, customary, regular, or common.'" *United States v. Edington*, No. 19-cr-00174-REB-1, 2020 WL 2744140, at *3 (D. Colo.

---

[1] To the extent that Mr. Funez argues that U.S.S.G. § 1B1.13 is not binding on the Court because it "predates the 2018 changes to the First Step Act," Docket No. 1046 at 9, the Court disagrees. "The First Step Act did not change the substantive standards governing compassionate release. A proposed sentence reduction still must be supported by: (1) extraordinary and compelling reasons; (2) *applicable policy statements issued by the Sentencing Commission*; and (3) the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Edington*, No. 19-cr-00174-REB-1, 2020 WL 2744140, at *2 (D. Colo. May 27, 2020) (quotations and alterations omitted) (emphasis added). "If the policy statement needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission, not by the courts." *United States v. Lynn*, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019).

May 27, 2020) (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020)). "However, because the apposite test is stated in the conjunctive, the dangers presented by the pandemic – which impact us all, worldwide – also must be 'compelling' in [the movant's] particular circumstances." *Id.*; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release."); *United States v. Bolze*, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) ("[T]he COVID-19 pandemic cannot present an extraordinary and compelling reason alone because the policy statement directs courts to consider individual reasons for compassionate release, not general threats to the prison population.").

Mr. Funez represents that he is obese, with a BMI of 31.2. Docket No. 1046 at 7. The Centers for Disease Control and Prevention ("CDC") has indicated that individuals with obesity, defined as a body mass index of 30 or higher, are at increased risk of developing severe illness from COVID-19. *See* Ctrs. for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020); *see also United States v. Jenkins*, No. 99-cr-00439-JLK-1, 2020 WL 2466911, at *7 (D. Colo. May 8, 2020) (discussing research showing that "the severity of COVID-19 illness increases with body mass index").

Mr. Funez states that recovery from TB can also increase the risks posed by severe COVID-19 and that his osteoarthrosis results in "chronic discomfort." *See* Docket No. 1046 at 8. Mr. Funez recognizes that TB recovery and osteoarthrosis are

5

not recognized risk categories according to the CDC. *See id.* Moreover, the government argues that Mr. Funez has submitted no evidence of his obesity. *See* Docket No. 1050 at 8. The government asserts, in fact, that Mr. Funez is generally healthy. *See id.* at 8-9.

More importantly, Mr. Funez has already contracted COVID-19, was asymptomatic, and recovered without any serious complications. *See* Docket No. 1050-2 at 8 ("Covid-19 Qwest lab confirmed without symptoms."); *see also* Docket No. 1050 at 9 (noting that BOP Senior Counsel deemed Mr. Funez recovered after showing "no additional or worsening symptoms for 10 days after being tested"). Even assuming that Mr. Funez could or would contract COVID-19 a second time, he provides no reason to believe that he would experience an adverse outcome, despite his obesity and TB recovery, given that he was asymptomatic when he contracted it before. *See United States v. Billings*, 2020 WL 4705285, at *2 (D. Colo. Aug. 13, 2020) (collecting cases and noting that it is the defendant's "burden to prove extraordinary and compelling reasons warrant a sentence reduction").

However, even assuming Mr. Funez could contract COVID-19 a second time and that the second time has the potential to be more serious, the Court finds that he still is not eligible for compassionate release. BOP Program Statement 5050.50 asks the reviewing court to examine the defendant's criminal and personal history, nature of the offense, disciplinary infractions, length of sentence and amount of time served, current age and age at time of offense and sentencing, release plans, and "whether release would minimize the severity of the offense." *Saldana*, 807 F. App'x at 819 (citations and alterations omitted). Mr. Funez argues that (1) his criminal history is "virtually non-

6

existent," (2) his role in the crime for which he is incarcerated was "limited," (3) according to a report by the United States Sentencing Commission, his age, 59 years old, statistically makes him a low recidivism risk, (4) he has received a just punishment because he has served nearly six years in prison, and (5) he has a comprehensive release plan.  *See* Docket No. 1046 at 9-12.

While Mr. Funez's release plan, the statistics regarding recidivism, and his lack of serious criminal history are favorable to him, the Court finds that, given the seriousness of the crime and length of time yet to be served, Mr. Funez fails to demonstrate that he qualifies for compassionate release under Subsection D.

First, Mr. Funez was convicted for his role in transporting a significant amount of methamphetamine across state borders.  Mr. Funez was not merely a driver; he was aware of the organization and its structure, he assisted in finding ways to transport the drugs secretly, took several trips to do so, and was a "very important part of the conspiracy."  *See* Docket No. 987 at 11-19.  This was a serious crime for which Mr. Funez was an active and integral member, as the length of his sentence demonstrates.  Thus, his role was not "limited," as Mr. Funez argues.

Second, Mr. Funez has served only six years of a fifteen and a half year sentence.  *See* Docket No. 1050-1 at 1-4.  With good time credits included, the total length is 12 and a half years.  *See id.*  Thus, even with good time credits, Mr. Funez has served less than half of his sentence.  While six years is a significant time in prison, serving half of a lengthy sentence is not appropriate given the seriousness of the offense, the need for respect for the law, and just punishment.  As a result, the Court

finds that releasing Mr Funez, who is a generally healthy inmate and has already recovered from COVID-19 without any complications, is not warranted.

Mr. Funez cites to the Court's decision in *United States v. Campanella*, – F. Supp. 3d –, No. 18-cr-00328-PAB-12, 2020 WL 4754041 (D. Colo. Aug. 17, 2020), as grounds for granting compassionate release. However, the circumstances in *Campanella* were different. The defendant in *Campanella* was morbidly obese, with a BMI of 45.52, and had an original sentence of 34 months imprisonment for which she served 16 months. *See id.* at *3-4. Comparatively, Mr. Funez is just barely above the threshold for obesity and has a term of imprisonment of 188 months, over five and a half times the length of the defendant's sentence in *Campanella*. As a result, the reasoning in *Campanella* is inapplicable here.

The Court determines that Mr. Funez has failed to establish that compelling and extraordinary circumstances exist to justify compassionate release.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Santos Funez's Emergency Motion for Compassionate Release [Docket No. 1046] is **DENIED**. It is further

**ORDERED** that defendant's pro se Motion for Compassionate Release [Docket No. 1042] is **DENIED**.

DATED January 19, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge